UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHAD ALLAN ENGLISH,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SOUTH CENTRAL COMMUNITY<br>HEALTH SERVICES, DR. DEAN,<br>LOU PROBASCO, BEHAVIORAL<br>HEALTH SERVICES, et al.,<br><br>　　　　　　　　Defendant. | Case No. 1:14-cv-00022-CWD<br><br>**REPORT AND RECOMMENDATION<br>RE: MOTIONS FOR SUMMARY<br>JUDGMENT (DKT. 28, 29.)** |

## INTRODUCTION

Before the Court are Defendants' motions for summary judgment. Defendants G. Adrian Dean, M.D., and Nurse Lou Probasco each filed a motion, seeking judgment as a matter of law on all claims asserted by self-represented Plaintiff Chad Allan English. (Dkt. 28, 29.) Having reviewed the briefs, as well as the record in this matter, the pending motions will be decided on the record. Dist. Idaho L. Rule 7.1(d). For the reasons that follow, the Court will recommend granting Defendants' motions for summary judgment on all Eighth Amendment claims and dismissing without prejudice all state law claims.

# FACTS[1]

English was an inmate at the Twin Falls County Jail (TFCJ) from November of 2013 through May of 2014.[2] English alleges that, while in custody at TFCJ, Defendants Dean and Probasco violated his Eighth Amendment right to adequate medical care. English asserts also state law tort claims against each Defendant. Defendants deny English's allegations, asserting English failed to exhaust his administrative remedies or, alternatively, they were not deliberately indifferent with respect to English's mental health care.

To better understand English's claims and Defendants' defense of failure to exhaust, the Court will provide a brief description of TFCJ's relevant rules and regulations regarding requests for medical care, set forth the facts supporting English's claims, and last set forth the grievance procedure and the relevant grievances filed in relation to the claims presented in this litigation.

## 1.      Twin Falls County Jail Medical Request Protocol

The TFCJ mental health care policy requires inmates to complete a medical request form to see a medical provider. (Dkt. 28-4 at 2-4.) Inmates requesting psychological care are seen by a nurse. The nurse observes the patient and gathers information that is then reported to the physician. Nurses are not authorized to prescribe medication or order medical procedures. (Dkt. 29-3 at 2.) The physician reviews the

---

[1] Unless otherwise indicated, the facts are undisputed. English failed to properly address Defendants' statements of undisputed facts as required by Fed. R. Civ. P. 56(c). Accordingly, the Court will consider Defendants' facts as undisputed for the purpose of considering the motions. *See* Fed. R. Civ. Pro. 56(e)(2); *see also* Dist. Idaho L. Rule 7.1(e)(2).

[2] It is unclear from the record whether English was a pretrial detainee or an inmate serving a sentence at TFCJ. The Court will refer to English as an inmate.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 2**

inmate's medical records and evaluates the inmate's behavior without medication through nurse reports to determine symptoms and diagnoses. (Dkt. 28-4 at 2-4.) If an inmate requests a specific medication or a meeting with the physician, the inmate is instructed to do so via letter, detailing his or her symptoms. The physician will meet with the inmate if the inmate suffers from objective signs of a disorder.[3]

## 2.    English's Mental Health Treatment

At various times during his detention at TFCJ, English self-reported to suffering from a combination of bipolar disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), schizoaffective disorder, obsessive compulsive disorder (OCD), generalized anxiety disorder (GAD), and alcoholism. Decl. Probasco, Ex. A (Dkt. 29 at 7, 45, 74.) He also self-reported to taking the following prescription medications: Seroquel, Xanax, Percocet, Paxil, Trazodone, Depakote, and Lithium. *Id.* at 4, 45, 47. English reported that, prior to his incarceration, he was being treated through the Veterans' Affairs Hospital (VA). English signed medical records releases so TFCJ could obtain his medical records from the VA. *Id.* at 4. In response to TFCJ's request, the VA produced basic lab results but responded that it had not provided English with mental health care.[4]

While detained at TFCJ, English began submitting requests for the medications described above and to be examined by the doctor. Because of the demonstrated

---

[3] Defendants do not provide further detail regarding how the physician determines if an inmate is exhibiting objective signs of a mental health disorder.
[4] During his deposition, English admitted he had not been professionally diagnosed or prescribed medication for any of these conditions for eight years prior to his incarceration at TFCJ and had been taking medication illicitly. (Dkt. 28-3.)

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 3**

unreliability of inmates' self-reports, medical staff members at TFCJ generally do not prescribe medication based solely on self-reported medical histories. (Dkt. 29-3 at 3.) English was first seen at the TFCJ by Nurse Lou Probasco[5] on November 4 and 5, 2013. During these visits, Probasco instructed English to contact Dean by letter regarding his mental health treatment history and medical requests.

Per Probasco's instructions, English wrote a letter to Dean on November 8, 2013. The letter included a list of mental disorders English claimed to be suffering from and a list of medications that he claimed to have been prescribed and taking. According to Dean, because English's letter did not describe symptoms warranting further treatment or prescription medication, Dean did not order any treatment or medication at that time. (Dkt. 29-4 at 50-51, 79.)

On November 20, 2013, English had another appointment with Probasco. English reported being concerned about his anxiety. Probasco reported the results of the appointment with English to Dean. Without personally examining English, Dean wrote a fourteen day prescription of Depakote for English, which was renewed on December 6, 2013, for another period of fourteen days. Probasco saw English again on December 2, 3, and 6, 2013. During these visits, English complained that Depakote did not appear to be working and requested specific alternative medications.

On December 9, 2013, English wrote another letter to Dean in which he provided a list of mental health conditions he claimed to be suffering from, along with a list of

---

[5] Lou Probasco is the director of nursing at Twin Falls County Jail. It is not clear from the record whether Probasco is a registered nurse, or has some other nursing degree.

prescription medications requested to treat the conditions. On December 20, 2013, Probasco saw Dean; during this visit, English again complained Depakote did not appear to be working, as he did in the prior three appointments. Probasco submitted his report to Dean, who determined from Probasco's report (and the prior reports) that there was no basis for prescribing English additional or alternative medication. Therefore, Dean discontinued English's Depakote prescription based on English's reports to Probasco that the medication was "not working."[6] *Id.*

Between December 20 and 31, 2013, Probasco and other TFCJ nursing staff saw English four additional times. At each visit, English requested medications, including Depakote. (Dkt. 28-4 at 8-9.) Additionally, English filed formal grievances during this period requesting specific medications. On the evening of January 31, 2014, English called the VA crisis line multiple times in an attempt to obtain medication. *Id.* at 10. As a result, TFCJ staff placed English on suicide watch. On February 10 and 14, 2014, English saw Probasco and requested medication, which requests Dean reviewed and denied. *Id.* at 10-11. The February visits were English's last medical visits. In total, Probasco (and other TFCJ nursing staff) saw English seventeen times; however, English never had an in-person appointment with Dean.

---

[6] During his deposition, English admitted he told Probasco that Depakote was not working in an attempt to "hint" at wanting a higher dosage, but that he never directly requested a higher dosage. (Dkt. 29-10 at 11.)

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 5**

**3.      Twin Falls County Jail Grievance Procedure**

At intake, inmates are provided a copy of the Twin Falls County Sheriff Adult

Detention Rules and Regulations which contains the Grievance and Informal Resolution

Process for Inmates. [7] Decl. Hughes ¶ 5 (Dkt. 29-5 at ¶ 6.)

If an inmate desires to grieve a decision or action, he must submit a standard

correspondence form via electronic means by using a kiosk at the TFCJ. *Id.* at ¶ 8. The

form must state the problem, provide specific information, and propose a solution. The

shift supervisor next will review the grievance and respond within four working days,

which the inmate may review online. *Id.* at ¶ 9.

The inmate may appeal the grievance within five days of receiving an

unsatisfactory response or once the four days have passed and no response has been

provided. *Id.* at ¶ 10. The inmate must use the same electronic system and mark their

submission as an appeal. The form must contain the reason for the appeal, an attempted

resolution, and reference the previously filed grievance.[8] The inmate's administrative

remedies are not fully exhausted until an appeal of the grievance is properly completed.

**4.      English's Grievances**

During his detention at TFCJ between November of 2013 and May of 2014,

English filed over one hundred and fifty grievances and requests. Decl. Hughes Ex. B.

---

[7] The grievance process detailed in the Rules and Regulation appears to be out of date. However, Hughes' Declaration describes the system being used at TFCJ at the time of English's detention.

[8] Both the formal policy and the Hughes Declaration state the requirement that an appeal must reference the previously filed grievance that is being appealed. However, neither the policy nor Hughes' declaration sets forth the specific manner in which the grievance must be referenced. From English's record of grievances and appeals, both medical and non-medical, it is clear English was aware of the need to reference the previous grievance in an appeal, and he did so by providing the grievance number in the summary of his appeal.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 6**

(Dkt. 29-7.) Of these, over one hundred occurred prior to March 3, 2014, when English filed his complaint with this Court.[9] While these records include general inmate requests predominately, there were twenty-one medical requests submitted during that time. English filed six requests for medical visits, thirteen medical grievances, and two medical appeals. Relevant to the exhaustion issue raised by Defendants are two medical grievances and two medical appeals, as described below.[10]

In a medical grievance filed on December 18, 2013, English stated the jail refused to give him his medication: "[I] don't need to see medical. [J]ust give me my medication." *Id.*at 71-72. At the time of this grievance, English was being prescribed Depakote. English received a response to this grievance later that day: "You are taking mental health medication. You refuse to see medical. With eyes on visits you appear to be functioning. Please see medical so Dr. Dean can be informed." *Id.* On December 23, 2013, English filed another medical grievance, stating: "[L]ou [P]robasco put me on [D]epakote then took me off. [P]ut me back on my meds." *Id.* at 91-92. English received a response to the grievance later that day: "Per your request you have been signed up to see the Medical Department." English was seen by a TFCJ medical provider following this grievance.

---

[9] English filed additional medical grievances and appeals after bringing suit. Decl. Hughes Ex. B. (Dkt. 29-7.) However, because the grievances and their corresponding appeals were filed after the complaint in this case, and English has not sought to add them as new claims, they are not relevant in this action, as the Court will explain later in this Report.
[10] English filed two medical appeals prior to bringing suit. Because TFCJ policy requires an appeal to be filed within five days of a response to a grievance, only the two grievances filed within close temporal proximity to the appeals are relevant.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 7**

On December 24, 2013, English filed his first medical appeal. *Id.* at 103-04. As the basis for his appeal, English stated: "[I] was put on [D]epakote then nurse took me off." The second medical appeal, filed on December 26, 2013, states: "[N]urse [L]ou [P]robasco refuses to give me my meds he says per [D]r. [D]ean." *Id.* at 105-06. The Defendants contest whether either of these appeals satisfies the exhaustion requirement, and alternatively claim English cannot establish an Eighth Amendment violation.

## PROCEDURAL BACKGROUND

On January 17, 2014, English conditionally filed a complaint against Probasco, Dean, and South Central Community Health Services (SSCHS). (Dkt. 3.) English asserted Fifth, Eighth, Ninth, and Fourteenth Amendment claims under 42 U.S.C. § 1983, as well as state law claims under Idaho Code Section 6-904C. *Id.* On March 3, 2014, English, along with two other TFCJ inmates, filed two additional complaints against Probasco and alleged similar Section 1983 and state law claims.

The Court issued an Initial Review Order on April 11, 2014. (Dkt. 6.) In that Order, the Court addressed the three complaints English had filed. The Court consolidated the claims raised by English in the three complaints into this action and allowed English to proceed on only his Eighth Amendment and state law claims against Dean and Probasco.[11] With the exception of theses Eighth Amendment claims, the Court found English had not stated sufficient facts to proceed against SSCHS or on his other Section 1983 claims.

---

[11] The other two inmates' claims proceed separately in other actions. *See Preal v. Probasco, et al.,* Case No. 1:14-cv-00075-ELJ; *see also Hernandez v. Probasco, et al.,* Case No. 1:14-cv-00076-BLW.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 8**

On February 11, 2016, Probasco and Dean each filed a motion for summary judgment. (Dkt. 28, 29.) Each defendant asserts English failed to exhaust his Eighth Amendment claims, or alternatively, that they were not deliberately indifferent or grossly negligent or reckless with respect to English's medical care. Dean additionally asserts that English failed to satisfy certain prerequisites for bringing his state law claims of medical malpractice, specifically the mandatory prelitigation screening process required pursuant to Idaho Code § 6-1001.

The Clerk of the Court sent English a notice of the summary judgment rule requirements.[12] (Dkt. 30.) When English failed to timely respond, Probasco and Dean filed reply memoranda in support of their summary judgment motions. (Dkt. 34, 35.) In each reply, they request the Court consider the facts they set forth as undisputed and grant summary judgment. On June 29, 2016, English filed a response to the motions for summary judgment, attempting to contest the facts set forth in the Defendants' motions. (Dkt. 37.) However, English's response contained merely a reiteration of the conclusory statements set forth in his complaints and did not provide any factual basis to support these conclusions. As such, English failed to properly address or dispute the facts set forth in Defendants' motions.[13]

---

[12] On February 18, 2016, the Court's notice sent to English was returned. (Dkt. 31.) English filed a notice of change of address on March 4, 2016. (Dkt. 32.) On March 15, 2016, the Clerk of Court remailed the notice of summary judgment requirements to English at his new address. The record reflects English received Defendants' motions for summary judgment and had opportunity to respond.

[13] Dean filed a reply to English's response on July 19, 2016, pointing out its untimeliness and requesting the Court strike the response. (Dkt. 38.) The Court will construe Dean's reply as a motion to strike. Because the Court finds English's response to be merely a reiteration of statements made in his complaint, not supported with facts, the Court will take the facts set forth by Defendants as undisputed as explained above. Therefore, Dean's motion to strike English's untimely response is moot.

## STANDARDS OF LAW

**1.     Summary Judgment**

Federal Rule of Civil Procedure 56 directs the Court to "grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims…." *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

 "The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex*, 477 U.S. at 323). "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

2.      **Exhaustion Standard**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[14] prisoners are required to exhaust all available administrative remedies within the prison system before they can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (holding that a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). However, an inmate need only exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, ___ U.S. ___, No. 15-339, 2016 WL 3128839, at *7 (June 6, 2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).[15]

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison

---

[14] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

[15] The record is not clear whether English was a pretrial detainee or serving a sentence while housed at TFCJ. However, the distinction is immaterial, as pretrial detainees are subject to the same exhaustion requirement as other inmates under the PLRA. *Villicana v. Orange County Sheriff's Dept.*, 471 Fed. Appx. 604 (9th Cir. Cir. 2012) (dismissing pretrial detainee's appeal, finding the district court properly dismissed the action because the detainee failed to exhaust administrative remedies prior to filing suit, and citing *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006)).

officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed, and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence to show that the administrative remedies were unavailable to him. *See Albino*, 747 F.3d at 1172.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d at 1162.

**3.     Section 1983 Standard**

English brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under 42 U.S.C. § 1983, English must allege facts which show a deprivation of a right, privilege, or immunity secured by the Constitution of federal law by a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

"Liability under Section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). In other words, English must show that Defendants' actions caused the deprivation of a

constitutional right. 42 U.S.C. § 1983; *Arnold v. Int'l Bus. Machs. Corp.*, 637 F.2d 1350,

1355 (9th Cir. 1981). "The causation requirement of § 1983 … is not satisfied by a

showing of mere causation in fact[;] [r]ather, the plaintiff must establish proximate or

legal causation." *Id.* The United States Court of Appeals for the Ninth Circuit has

explained: "A person 'subjects' another to the deprivation of a constitutional right, within

the meaning of § 1983, if he does an affirmative act, participates in another's affirmative

acts, or omits to perform an act which he is legally required to do that causes the

deprivations of which he complains." *Id.* (internal citations omitted).

## DISCUSSION

### 1.      Exhaustion

Dean asserts English failed to properly comply with all TFCJ procedures with

regard to his two grievances filed on December 18, 2013, and December 23, 2013.

Probasco, however, states English's December 18, 2013 grievance was not timely

appealed, but that his December 23, 2013 grievance may have been timely appealed.

(Dkt. 29-1, 29-5.) The Court will discuss the relevant grievances and corresponding

appeals in turn.

"Proper" exhaustion of administrative remedies is required; the prisoner must

comply "with [the prison's] deadlines and other critical procedural rules[.]" *Woodford*,

548 U.S. at 90-91. To properly exhaust a grievance in accordance with TFCJ procedures,

an inmate must appeal a grievance within five days of a response, must reference the

grievance that is being appealed, and must mark the submission as an appeal in the TFCJ

system.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 13**

English submitted the first relevant grievance on December 18, 2013. TFCJ responded to the grievance the same day, giving English five days to appeal. English would have had to appeal by December 23, 2013, for his appeal to be timely. However, English did not file any medical appeal by December 23, 2013. Accordingly, English did not successfully exhaust the grievance process with regard to the December 18, 2013 grievance.

English submitted the second relevant grievance on December 23, 2013, and received a response the same day. English then had five days to appeal. Either the December 24 or 26, 2013 appeal would theoretically be timely filed. However, the Court finds neither appeal complied with TFCJ policy because both appeals failed to directly reference the grievance being appealed from other than referring to previous requests for medication. The record of English's grievances and appeals while at TFCJ demonstrate English was aware of the electronic grievance system and was capable of properly complying with TFCJ procedures. English has provided no evidence to dispute this. Based upon the record, the Court notes that English referenced grievances by grievance number in the summary of other appeal requests, which he did not do in either the December 24 or December 26 appeal. Instead, the two appeals simply indicate he was taken off Depakote, and that he wanted his medication.

The Court finds English may have failed to exhaust the technical requirement of the administrative procedure available at TFCJ with respect to the December 23, 2013 grievance prior to filing suit. But, rather than recommending dismissal for failure to exhaust, the Court will address the Eighth Amendment claims raised by English with

respect to the grievance and appeal he did file, timely or otherwise, regarding discontinuation of Depakote.

No other grievances are relevant here. English filed additional grievances on March 10, 2014, and filed timely appeals on March 11, 2014, which properly reference these grievances by grievance number and satisfy all three requirements of the TFCJ policy. But, each of these grievances and appeals occurred after March 3, 2014, the date English filed the later two complaints that were then consolidated into the complaint here. The grievances and appeals related to the same substantive claims already asserted in this suit and English did not attempt to include them as additional claims. Accordingly, the grievances and their corresponding appeals are not relevant to the exhaustion issue before the Court. *See Cano*, 739 F.3d at 1220-21 (holding that exhaustion must have been completed before the first time the prisoner sought to include the claim in the suit).

The Court will examine the merits of English's Eighth Amendment claim that Dean and Probasco discontinued Depakote in December of 2013, given in large part due to Defendants' apparent disagreement concerning whether English fully exhausted the December 23, 2013 grievance.

2.      **Eighth Amendment Standard**[16]

The Eighth Amendment protects prisoners against cruel and unusual treatment and

includes the right to adequate medical and mental health care in prison. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976); *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir.

1994). To state a claim under the Eighth Amendment, a plaintiff must show that he is

incarcerated "under conditions posing a substantial risk of serious harm," or that he has

been deprived of "the minimal civilized measure of life's necessities." *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994) (internal citation omitted). An Eighth Amendment

claim requires a plaintiff to satisfy "both an objective standard – that the deprivation was

serious enough to constitute cruel and unusual punishment – and a subjective standard –

deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

Regarding the objective standard for prisoners' medical care claims, the Supreme

Court has explained that, "[b]ecause society does not expect that prisoners will have

unqualified access to health care, deliberate indifference to medical needs amounts to an

Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillan*, 503

U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

[F]ailure to treat a prisoner's condition [that] could result in further
significant injury or the unnecessary and wanton infliction of pain[;] …

---

[16] The Eighth Amendment applies to prisoners serving a sentence while the Fourteenth amendment
applies to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979). However, the standard
under either constitutional provision is the same. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232,
1243-44 (9th Cir. 2010). As previously noted, it is not clear from the record whether English was a
pretrial detainee or serving a sentence while at TFCJ. Because the Defendants raised arguments under the
Eighth Amendment and English has not contested its applicability, the Court will address English's
Section 1983 claims under the Eighth Amendment.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 16**

> [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain….

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

As to the subjective standard, a prison official acts with "deliberate indifference … only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citation and internal quotation marks omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837). "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted).

Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the

prisoner's health." *Toguchi*, 391 F.3d at 1058 (alternation omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). The Eighth Amendment does not provide a right to a specific treatment. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("[The plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her.").

**A.**   *Analysis*

English asserts his Eighth Amendment right to adequate medical care was violated by the discontinuation of his Depakote prescription and asserts this claim against both Dean and Probasco. However, the record indicates that, as a nurse, Probasco was not authorized to prescribe medication and there is no evidence Probasco made unauthorized decisions regarding English's mental health treatment. English acknowledged in his deposition that Dean, rather than Probasco, was responsible for making decisions regarding his medical care. Accordingly, the Court finds that English has not asserted facts sufficient to support an Eighth Amendment claim against Probasco regarding the discontinuation of Depakote or the provision of medical care.

Dean, on the other hand, determined there was no basis for continuing to prescribe English Depakote based upon Probasco's reports about English's behavior. English's complaint amounts to a difference in judgment between an inmate and a physician about English's medical diagnosis and appropriate treatment. Other than continuing to deny the requested medication, English has not established that Dean's decision to discontinue Depakote was medically inappropriate under the circumstances.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 18**

Next, English has not asserted facts to establish he suffered from a serious medical need necessitating the continuation of Depakote to treat any specific symptoms. English claims to have suffered from a variety of mental health issues, but he has put forth no facts to show he had received any mental health diagnosis or treatment prior to his detention at TFCJ. Both Dean and Probasco attempted to verify English's treatment history by obtaining medical records from the VA, where English indicated he had received mental health treatment. However, the VA provided only basic lab results and reported it had not treated English for mental health conditions.

English's letters to Dean identifying the mental health disorders he claimed to suffer from did not describe symptoms warranting further treatment. When English complained of suffering from anxiety, Probasco reported the symptoms to Dean, and Dean prescribed Depakote to treat these symptoms. The Depakote was then discontinued when English reported it was not working. Dean relied upon English's own statement that Depakote was not working. Thereafter, English did not report further symptoms, and Dean found no basis for alternative treatment. English has not provided facts to the contrary.

Additionally, English has not set forth facts that show Dean was deliberately indifferent when discontinuing English's prescription of Depakote. English told Probasco

Depakote was not working, which Probasco reported to Dean.[17] As a result of Probasco's report and English's statement, Dean discontinued the medication.

And finally, there was no indication English continued to suffer from a mental health disorder warranting the continued prescription of Depakote. Dean relied on Probasco's report and English's statement as the basis for the decision to discontinue the Depakote. Absent knowledge of a need to prescribe Depakote to treat what appeared to be nonexistent symptoms, Dean had no knowledge that discontinuation of Depakote presented an excessive risk of harm to English's health. Probasco saw English several times after the Depakote was discontinued, and reported the visits to Dean. There was no indication in Probasco's reports to Dean that English suffered adverse effects from discontinuing Depakote. Dean was therefore not deliberately indifferent to English's medical needs when he discontinued what he believed was an ineffective medication to address what did not appear to be a serious mental health issue.

The Court declines to address whether Dean should have considered alternative medications to address English's alleged mental health condition. First, English did not specifically grieve or appeal anything other than Dean's decision to discontinue Depakote. Second, according to the record, English's symptoms did not warrant further drug therapy. And finally, there is no evidence in the record English continued to suffer from a serious medical need warranting the trial of an alternative drug therapy.

---

[17] English admitted in his deposition that he told Probasco Depakote was not working in the hopes of receiving a higher dosage. English never directly requested a higher dosage of Depakote. Dean had only Probasco's report based upon English's admission that the medication was ineffective.

**REPORT AND RECOMMENDATION RE: MOTIONS FOR SUMMARY JUDGMENT - 20**

English has failed to meet his burden upon summary judgment to show a genuine dispute of material facts regarding his Eighth Amendment claim against either Defendant. Accordingly, the Court will recommend that summary judgment be granted and the Eighth Amendment claims asserted against Defendants be dismissed with prejudice.

## 2.     State Law Claims

In its Initial Review Order, the Court allowed English to proceed on state law claims of gross negligence and recklessness against Defendants Dean and Probasco under Idaho Code § 6-904. (Dkt. 6.) Given the recommendation to grant summary judgment in favor of Defendants on English's Eighth Amendment claims, however, there are no federal law claims remaining in this action. Dismissal of English's state law claims at this stage is within the Court's discretion. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction."). The Supreme Court has stated that, "if the federal claims are dismissed before trial, … the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The Court will recommend that it decline to exercise jurisdiction over English's state law claims and dismiss those claims without prejudice, allowing English to re-file them in state court if he chooses to. Because this dismissal is jurisdictional in nature, it does not operate as "an adjudication upon the merits." Fed. R. Civ. P. 41(b). In addition, 28 U.S.C. § 1367(d) provides that, for claims that are "so related to" claims giving rise to federal jurisdiction, the period of limitations is tolled while the claim is pending and for a

period of 30 days after this dismissal, "unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *see also Jinks v. Richland County*, 538 U.S. 456 (2003) (upholding constitutionality of § 1367(d) tolling). Idaho Code § 5-219 provides for a two-year statute of limitations for professional malpractice and personal injury actions. It does not appear English would be precluded by the two-year statute of limitations from re-filing his state law claims in Idaho state court.

## CONCLUSION

English has not met his burden upon summary judgment to show there are disputed issues of material fact regarding his Eighth Amendment claims of inadequate medical care to support his Section 1983 claims against either Probasco or Dean. The Court will recommend summary judgment be granted in favor of Defendants as to all of English's Eighth Amendment claims, and they be dismissed without prejudice. Additionally, the Court will recommend dismissing English's state law claims without prejudice.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1) Defendant Dean's Motion for Summary Judgment (Dkt. 28) be

   **GRANTED in part**, and Plaintiff's Eighth Amendment claims dismissed

   with prejudice;

2) Defendant Probasco's Motion for Summary Judgment (Dkt. 29) be

   **GRANTED in part,** and Plaintiff's Eighth Amendment claims dismissed

   with prejudice; and

3) Plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** for

   lack of jurisdiction.

Written objections to this Report and Recommendation must be filed within

fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or

as a result of failing to do so, that party may waive the right to raise factual and/or legal

objections to the United States Court of Appeals for the Ninth Circuit.

DATED: July 28, 2016

Honorable Candy W. Dale
United States Magistrate Judge